AMOUNT
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE

FILED
IN CLERKS OFFICE

2006 DEC 22  A 11: 07

U.S. DISTRICT COURT
DISTRICT OF MASS

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

JAMES MATSON, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

NVIDIA CORPORATION; ATI
TECHNOLOGIES, INC.; and
ADVANCED MICRO DEVICES, INC.,

Defendants.

06 CA 12286 DPW

Case No.

MAGISTRATE JUDGE Alexander

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by his attorneys, hereby brings this action to obtain injunctive relief

under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the

Sherman Act, 15 U.S.C. § 1, to recover damages under state antitrust and consumer

protection laws and state common law principles of restitution, disgorgement, unjust

enrichment, and to recover the costs of suit, including reasonable attorneys' fees, for the

injuries that Plaintiff and all others similarly situated sustained as a result of Defendants'

violations of those laws.  Plaintiff's allegations as to himself and his own actions are

based upon his own knowledge.  All other allegations are based upon information and

belief pursuant to the investigation of counsel.  The Defendants have exclusive

possession, custody or control of information and documents relating to their conspiracy

to fix, raise, maintain and/or stabilize the prices of graphics processing units and cards.

## NATURE OF THIS ACTION

1.    This case arises out of a conspiracy beginning no later than December

2002 and continuing until the present, among all Defendants and their co-conspirators

with the deliberate purpose and effect of fixing, raising, maintaining and stabilizing the prices of, graphics processing units and cards and products containing graphics processing units and cards distributed or sold to Plaintiff and other consumers throughout the United States.

2.      This action is brought as a class action on behalf of all persons that indirectly purchased graphics processing units or cards from any of the Defendants between December 2002 and the present.

3.      Defendants are the leading manufacturers of graphics processing units and cards and control the graphics processing units and cards industry. Defendants maintain approximately 90% of the market for graphics processing units and cards.

4.      Throughout the Class Period, Defendants have sold graphics processing units and cards in the United States and elsewhere. Plaintiff alleges that during the Class Period, Defendants willfully and knowingly conspired, combined and contracted to fix, raise, maintain and stabilize the prices at which graphics processing units and cards were sold in the United States

5.      Defendants' anticompetitive conduct has deliberately targeted, and injured consumers in Massachusetts and throughout the United States. The conspiracy has affected millions of dollars of commerce in products found in American households.

6.      As a result of Defendants' unlawful conduct, Plaintiff and other members of the Class paid artificially inflated prices for stand alone graphics processing units or cards and products containing graphics processing units or cards during the Class Period.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331

and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367

because those claims are so related to the federal claim that they form part of the same

case or controversy. The Court also has jurisdiction over the state law claims under 28

U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and

there are members of the Class who are citizens of a different state than the defendants.

8.    Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391

because Defendants reside, transact business, or are found within this District, and a

substantial part of the events giving rise to the claims arose in this District.

9.    The activities of the Defendants and their co-conspirators, as described

herein, were within the flow of, were intended to, and did have a substantial effect on the

foreign and interstate commerce of the United States.

## PARTIES

**The Plaintiff**

10.    Plaintiff and proposed class representative James Matson, is a resident of

Norfolk County, Massachusetts. During the time period covered in this Complaint,

Plaintiff indirectly purchased graphics processing units and cards from one or more of the

Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid

supra-competitive and artificially inflated prices for graphics processing units and cards

and has been injured by reason of the illegal conduct alleged herein.

**The Defendants**

11.    Defendant Nvidia Corporation ("Nvidia") is a Delaware corporation with

its principal place of business at 2701 San Tomas Expressway, Santa Clara, California

95050. During the Class Period, Defendant Nvidia manufactured, sold and distributed

graphics processing units and cards to customers throughout the United States.

12.    During the Class Period, Nvidia directly or indirectly and through affiliates that it dominated and controlled, conspired with others named as Defendants herein to, and did, set prices pursuant to illegal agreements to fix, raise, maintain or stabilize prices of graphics processing units and cards in and/or distributed to Massachusetts and throughout the United States.  These horizontal-pricing practices restrained trade or commerce in the United States and were designed to have, and did in fact have a substantial and adverse impact on prices for graphics processing units and cards and products containing graphics processing units and cards sold and/or distributed to Plaintiff and the Class.

13.    During the Class Period, and as a direct and intended consequence of its involvement in the horizontal price-fixing conspiracy alleged herein, Nvidia controlled, directly or indirectly, the price or cost of graphics processing units and cards sold and/or distributed in the United States.

14.    Defendant ATI Technologies, Inc. ("ATI") is Canadian corporation with its principal place of business located at 1 Commerce Valley Drive East, Markham, Ontario, Canada L3T 7X6.  During the Class Period, Defendant ATI manufactured, sold and distributed graphics processing units and cards to customers throughout the United States.

15.    During the Class Period, ATI directly or indirectly and through affiliates that it dominated and controlled, conspired with others named as Defendants herein to, and did, set prices pursuant to illegal agreements to fix, raise, maintain or stabilize prices of graphics processing units and cards in and/or distributed to Massachusetts and

throughout the United States. These horizontal-pricing practices restrained trade or commerce in the United States and were designed to have, and did in fact have, a substantial and adverse impact on prices for graphics processing units and cards and products containing graphics processing units and cards sold and/or distributed to Plaintiff and the Class.

16.    During the Class Period, and as a direct and intended consequence of its involvement in the horizontal price-fixing conspiracy alleged herein, ATI controlled, directly or indirectly, the price or cost of graphics processing units and cards sold and/or distributed in the United States.

17.    Defendant Advanced Micro Devices, Inc. ("AMD") is a Delaware Corporation with its principal place of business located at One AMD Place, P.O. Box 3453, Sunnyvale, California 94088-3453. On October 25, 2006 AMD acquired ATI in a deal valued at $5.4 billion. During the Class Period, through its acquisition of Defendant ATI, Defendant AMD manufactured, sold and distributed graphics processing units and cards to customers throughout the United States.

18.    During the Class Period, AMD directly or indirectly and through affiliates that it dominated and controlled, conspired with others named as Defendants herein to, and did, set prices pursuant to illegal agreements to fix, raise, maintain or stabilize prices of graphics processing units and cards in and/or distributed to Massachusetts and throughout the United States. These horizontal-pricing practices restrained trade or commerce in the United States and were designed to have, and did in fact have, a substantial and adverse impact on prices for graphics processing units and cards and products containing graphics processing units and cards sold and/or distributed to

Plaintiff and the Class.

19.    During the Class Period, and as a direct and intended consequence of its

involvement in the horizontal price-fixing conspiracy alleged herein, AMD controlled,

directly or indirectly, the price or cost of graphics processing units and cards sold and/or

distributed in the United States.

**Co-Conspirators**

20.    Various others, presently unknown to Plaintiff, participated as co-

conspirators with the Defendants in the violations of law alleged in this Complaint and

have engaged in conduct and made statements in furtherance thereof.

21.    The acts charged in this Complaint have been done by Defendants and

their co-conspirators, or were authorized, ordered or done by their respective officers,

agents, employees or representatives while actively engaged in the management of each

Defendant's business or affairs.

22.    Each of the Defendants named herein acted as the agent or joint venturer

of or for the other Defendants with respect to the acts, violations and common course of

conduct alleged herein.

### CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and

23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff

Class ("the Class") composed of and defined as follows:

> All persons residing in the United States who, from December,
> 2002 to the present (the "Class Period"), purchased graphics
> processing units or cards in the United States indirectly from the
> Defendants for their own use and not for resale.  Specifically

excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

24.     With respect to Counts Two, Three, and Four, the Class seeks damages for those person harmed by Defendants' unlawful conduct in the United States enumerated in those Counts.

25.     This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons: The Class is ascertainable, and there is a well-defined community of interest among the respective members of the Class.

26.     Based on the nature of the trade and commerce involved and the number of indirect purchasers of graphics processing units and cards, Plaintiff believes that class members in the Class number in the thousands, and therefore are sufficiently numerous that joinder of all Class members is not practicable.

27.     Except as to the amount of damges each member of the Class has sustained, all other questions of law and fact are common to the Class, including, but not limited to:

> a)     whether Defendants engaged in a contract, combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for graphics processing units and cards;

> b)     whether the contract, combination or conspiracy caused graphics processing units and cards prices to be higher than they would have

been in the absence of Defendants' conduct;

c)   the operative time period of Defendants' contract, combination or
     conspiracy;

d)   whether Defendants' conduct violates Section 1 of the Sherman
     Act;

e)   whether the Defendants and their co-conspirators engaged in
     unlawful, unfair or deceptive contracts, combinations or
     conspiracies among themselves, express or implied, to fix, raise,
     maintain, or stabilize prices of graphics processing units and cards
     sold in and/or distributed in the United States;

f)   whether the Defendants and their co-conspirators engaged in
     conduct that violated state antitrust, unfair competition, and/or
     consumer protection laws as alleged herein;

g)   whether the anticompetitive conduct of the Defendants and their
     co-conspirators caused prices of graphics processing units and
     cards to be artificially inflated to non-competitive levels;

h)   whether the Defendants and their co-conspirators fraudulently
     concealed the existence of their unlawful conduct;

i)   whether Plaintiff and the Class are entitled to injunctive relief; and

j)   whether Plaintiff and other members of the Class were injured by
     the conduct of Defendants and, if so, the appropriate class-wide
     measure of damages.

28.    These and other questions of law and fact are common to the Class and predominate over any question affecting only individual members of the Class, including legal and factual issues relating to liability, damages, and restitution.

29.    Plaintiff's claims are typical of the claims of all members of the Clase in that Plaintiff was a purchaser of graphics processing units and cards, the Plaintiff and all Class members were injured by the same anti-competitive and unlawful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

30.    Plaintiff will fairly and adequately protect the interests of the Class, in that, Plaintiff is a typical indirect-purchaser of graphics processing units and cards, and has no interests that are antagonistic to other members of the Class. Furthermore, Plaintiff has retained competent counsel experienced in the prosecution of class actions and antitrust and consumer protection litigation.

31.    This class action is superior to any alternatives for the fair and efficient adjudication of this controversy because:

        a)    it will avoid a multiplicity of suits and consequent burden on the Court and parties;

        b)    it would be virtually impossible for all Class members to intervene as parties-plaintiff in this action;

        c)    it will allow numerous individuals or entities with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;

d)    a class action is appropriate for treatment on a fluid recovery basis,

which will obviate any manageability problems; and

e)    it will provide court oversight of the claims process, once

Defendants' liability is adjudicated.

32.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

33.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## TRADE AND COMMERCE

34.    During the Class Period, Defendants engaged in continuous contracts, combinations or conspiracies in restraint of trade in violation of the Sherman Act.

35.    During the Class Period, Defendants sold and shipped substantial quantities of graphics processing units and cards in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states and countries in which Defendants produced graphics processing units and cards.  Defendants and their co-conspirators received millions of dollars from such interstate trade and commerce.

36.    The Defendants' business activities that are the subject of this Complaint were within the flow of and substantially affected interstate trade and commerce.

37.    During the Class Period, the Defendants' conduct and their co-conspirators' conduct occurred in, affected, and foreseeably restrained the interstate commerce in the United States.

## FACTUAL ALLEGATIONS

**A.    Background of the Graphics Processing Units and Cards**

38.    As used herein, graphics processing units and cards are highly specialized semiconductors and related products that increase the speed, complexity and visual fidelity of digital images that can be displayed on graphical interfaces.

39.    The manufacture of graphics processing units and cards is a multi-million dollar a year industry worldwide. Depending upon their use, graphics processing units and cards can sell for between $50 and $500 each.

40.    Nvidia has a market share of approximately 55%. AMD, which recently purchased ATI, has approximately 35% of the market. Together, the Defendants account for approximately 90% of the graphics processing units and cards market.

41.    The graphics processing units and cards manufactured by the Defendants have virtually the same features and abilities. Further, the prices are nearly identical.

42.    Nvidia Corporation states on its website that it is the "worldwide leader in programmable graphics processor technologies." It further states that it creates products for computing, consumer electronics, and mobile device applications.

43.    The Nvidia brands for graphics processing units and cards include Nvidia GeForcem, Nvidia GoForcem, Nvidia Quadro®, and Nvidia nForcem. Nvidia's product applications include video games, film production, broadcasting, industrial design, space exploration, and medical imaging.

44.    PC and Handset Original Equipment Manufacturers, such as Apple, Dell, Fujitsu Siemens, Gateway, HP, IBM, Lenovo, LG, Medion, Mitsubishi, Motorola, MPC, NEC, Samsung, Sony Electronics, Sony Ericsson, and Toshiba, incorporate Nvidia

technology into their products. Further, system builders, such as Alienware, Falcon
Northwest, HCL, SAHARA and Shuttle, also incorporate Nvidia products. Additionally,
Nvidia products have been adopted by the world's leading add-in card and motherboard
manufacturers, including ASUS, BFG, EVGA, Foxconn, GIGABYTE, MSI, Palit, Point
of View, and XFX.

45.    Defendant ATI stated in its 2005 Annual Report that it is one of the
world's leading providers of graphics processors and technologies. ATI products are
found in desktop and notebook computers, and consumer electronics devices such as
mobile phones, digital televisions and game consoles.

46.    ATI's two primary markets for its semiconductor graphics products are the
PC and Consumer markets. In the PC segment, ATI's desktop brands include Radeon
(desktop products), FireGL (workstations) and All-in-Wonder (multimedia products). Its
brand for notebook computer discrete products is Mobility Radeon. ATI's chipset
products are targeted to motherboard manufacturers and OEMs, and include the Radeon
Xpress 200 integrated chipsets for the desktop and notebook markets and the Radeon
Xpress CrossFire Edition chipsets designed to be used in conjunction with one or more
discrete graphics chips in graphically demanding applications such as gaming.

47.    In its consumer segment, ATI's products are designed to provide advanced
visual and audio processing for color mobile phones and other handheld devices, and
include ATI's Imageon product line. With respect to digital television, ATI's Xilleon and
Theater products are highly integrated visual and signal processing solutions offered to
DTV and set-top box manufacturers. In the game console market, the Microsoft xBox
360 and Nintendo GameCube both utilize ATI's products.

{00010228.DOC ; 2}                    12

48.     The market for the manufacture and sale of graphics processing units and cards is conducive to the type of collusive activity alleged here. The market for the manufacture and sale of graphics processing units and cards is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly. Graphics processing units and cards are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

49.     The graphics processing units and cards industry has also been subject to significant consolidation during the Class Period.

50.     Defendants sell their graphics processing units and cards through various channels including to manufacturers of electronic products and devices, and to resellers of graphics processing units and cards. These electronic products and devices and graphics processing units and cards are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

**B.     Defendants' Anticompetitive Acts**

51.     Defendants have conspired and colluded to artificially fix, raise, maintain and stabilize the prices charged for stand-alone and preinstalled graphics processing units and cards.

52.     Defendants, through their officers, directors and employees, effectuated the aforesaid contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

> a)     participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of

graphics processing units and cards in the United States;

b)    agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of graphics processing units and cards sold in the United States;

c)    issuing price announcements and quotations in accordance with the agreements reached; and

d)    selling graphics processing units and cards to various customers in the United States at non-competitive prices.

53.    Through the conspiracy and collusion, Defendants have excluded competition and maintained a monopoly over graphics processing units and cards.

54.    By introducing graphics processing units and cards with virtually the same features and same prices, the market forces of competition are virtually extinguished.

55.    On November 30, 2006, Defendant AMD announced that it "has received a subpoena from the U.S. Department of Justice ("DOJ") Antitrust Division in connection with the DOJ's investigation into potential antitrust violations related to graphics processors and cards."

56.    On November 30, 2006, Defendant Nvidia announced that it "has received a subpoena from the San Francisco Office of the Antitrust Division of the Department of Justice in connection with the DOJ's investigation into potential antitrust violations related to Graphics Processing Units and Cards."

57.    On December 1, 2006, a news source reported: "[t]he Department of Justice investigators asked Nvidia for pricing documents, customer agreements and other documents …"

58.    Michael Hara, vice president of corporate communications at Nvidia, confirmed that the Justice Department requested a broad range of documents relating to customers, competitors, product stack, prices, market studies going back eight or nine years.

59.    Gina Talamona, a spokeswoman for the DOJ, said that the antitrust division is looking into possible anticompetitive practices within the graphics processing unit and cards industry.

60.    One commentator has compared the DOJ's investigation of graphics processing units and cards to its successful prosecution of manufacturers of Dynamic Random Access Memory ("DRAM"), which has resulted in $731 million in criminal fines: " 'If the DOJ wanted to, it could just go down every line in the semiconductor industry and find the same issue,' said Gartner Inc. analyst Richard Gordon.  That's because there are a relatively few number of suppliers in the chip industry and an open flow of communication between competitors and customers, who may not define price fixing the same way the DOJ does."

## RESULTS OF UNLAWFUL CONDUCT

61.    Plaintiff and the Class members have been damaged as a direct, foreseeable, and proximate result of Defendants' unlawful conduct.  There are virtually no choices for consumers who are required to purchase a graphics processing units and cards because Defendants maintain approximately 90% of the market.  Plaintiff and Class members have been forced to pay supra-competitive prices for graphics processing units and cards and products that contain graphics processing units and cards.

62.    Each Defendant has substantially benefited from its participation in this illegal price-fixing conspiracy.

## DEFENDANTS' CONTINUING VIOLATIONS OF LAW

63.    As set forth herein, Defendants have used their illegal conspiracy and unlawful market power to suppress competition and harm Plaintiff and other members of the Class by fixing, raising, maintaining and stabilizing the price of, graphics processing units and cards sold and/or distributed in the United States.

64.    These illegal practices of Defendants have resulted in continuing and accumulating harm to Plaintiff and the other members of the Class by allowing Defendants to affect, fix, raise, maintain, or stabilize at artificial and non-competitive levels, the prices at which graphics processing units and cards were sold and/or distributed in the United States.

65.    The continuing and accumulating harm suffered by, and continuing to be suffered by Plaintiff and the Class, specifically includes being overcharged for graphics processing units and cards as a result of Defendants' illegal conspiracy.

## FRAUDULENT CONCEALMENT

66.    Throughout the relevant period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct from Plaintiff and the Class. Defendants and their co-conspirators engaged in a successful, fraudulent and deceptive conspiracy that by its nature was inherently self-concealing. Furthermore, throughout the Class Period, Defendants and their co-conspirators effectively, affirmatively, and fraudulently concealed their unlawful conduct and price-fixing agreement from Plaintiff and the other members of the Class.

67.     Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.

68.     Plaintiff exercised due diligence to learn of his legal rights, and, despite the exercise of due diligence, did not discover, and could not have discovered, the violations of law alleged above until shortly before this class action litigation was commenced.

69.     As a result of Defendants' fraudulent concealment, Plaintiff and the Class assert the tolling of any applicable statutes of limitations affecting the rights of action of Plaintiff and the members of the Class.

## VIOLATIONS ALLEGED

### Count One

### (Violation of Section 1 of the Sherman Act)

70.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further alleges, as follows, against all Defendants.

71.     Beginning at a time presently unknown to Plaintiff, but at least as early as December, 2002 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for graphics processing units and cards in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

72.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    a)    to fix, raise, maintain and stabilize the price of graphics processing units and cards;

    b)    to allocate markets for graphics processing units and cards among themselves;

    c)    to submit rigged bids for the award and performance of certain graphics processing units and cards contracts; and

    d)    to allocate among themselves the production of graphics processing units and cards.

73.    The combination and conspiracy alleged herein has had the following effects, among others:

    a)    price competition in the sale of graphics processing units and cards has been restrained, suppressed, and/or eliminated in the United States;

    b)    prices for graphics processing units and cards sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

      c)     those who purchased graphics processing units and cards directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

74.    Plaintiff has been injured and will continue to be injured in his business and property by paying more for graphics processing units and cards purchased indirectly from the Defendants and their co-conspirators than he would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers and other products in which graphics processing units and cards is a component as a result of higher prices paid for graphics processing units and cards by the manufacturers of those products.

75.    Plaintiff and the class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## Count Two

### (Violation of State Antitrust Statutes)

76.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further alleges, as follows, against all Defendants.

77.    Defendants' intentional and purposeful anti-competitive acts that are described above, including but not limited to collusion to set prices and the actual act of price fixing, caused and was intended to cause Plaintiff and the Class to pay supra-competitive prices for graphics processing units and cards.

78.    Defendants' monopolistic and anticompetitive acts as described above are in violation of the following state antitrust statutes:

79.    Defendants have violated Arizona Revised Statutes § 44-1403.

80.    Defendants have violated California Business & Professions Code §

16700, *et seq.*

81.    Defendants have violated District of Columbia Code § 28-4503.

82.    Defendants have violated Florida Statutes § 542.19.

83.    Defendants have violated Iowa Code § 553.5.

84.    Defendants have violated Kansas Statutes § 50-101.

85.    Defendants have violated Maine Revised Statutes, Title 10 § 1102.

86.    Defendants have violated Michigan Compiled Laws § 445.773.

87.    Defendants have violated Minnesota Statutes § 325D.52.

88.    Defendants have violated Mississippi Code § 75-21-1, *et seq.*

89.    Defendants have violated Nevada Revised Statutes § 598A.060.

90.    Defendants have violated New Mexico Statutes § 57-1-2.

91.    Defendants have violated New York General Business Law § 340, *et seq.*

92.    Defendants have violated North Carolina General Statutes § 75-2.1.

93.    Defendants have violated North Dakota Century Code § 51-08.1-03.

94.    Defendants have violated South Dakota Codified Laws § 37-1-3.2.

95.    Defendants have violated Tennessee Code § 47-25-101, *et seq.*

96.    Defendants have violated Vermont Statutes, Title 9, § 2453.

97.    Defendants have violated West Virginia Code § 47-18-4.

98.    Defendants have violated Wisconsin Statutes § 133.03.

99.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial. Plaintiff and the Class seek treble damages pursuant to the antitrust laws as stated above where they are allowed.

100.    Defendants' willful and unlawful conduct allows Plaintiff and the Class to seek attorneys' fees in the states where they are allowed by law. Therefore, Plaintiff and the Class seek attorneys' fees where they are allowed by law.

<u>**Count Three**</u>

**(Violation of State Consumer Statutes)**

101.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further alleges, as follows, against all Defendants.

102.    The deceptive practices of the Defendants as alleged above included but are not limited to collusion between Defendants in setting prices and actual price fixing with the intended purpose to maintain supra-competitive pricing in the market for graphics processing units and cards (all unknown to the general consumer public). Defendants' deceptive and anti-competitive conduct resulted in higher consumer prices for graphics processing units and cards.

103.    Defendants' acts as described above are in violation of the following state Consumer Protection statutes:

104.    Defendants have violated California Business & Professions Code § 17200, *et seq.*

105.    Defendants have violated District of Columbia Code § 28-3901.

106.    Defendants have violated Florida Statutes § 501.201.

107.    Defendants have violated Kansas Statutes § 50-101.

108.    Defendants have violated Maine Revised Statutes, Title 5 § 207, *et seq.*

109.    Defendants have violated Nevada Revised Statutes § 598.0903, *et seq.*

110.    Defendants have violated New Mexico Statutes § 57-12-1, *et seq.*

111.    Defendants have violated North Carolina General Statutes § 75-1.1, *et seq*.

112.    Defendants have violated Vermont Statutes, Title 9, § 2451, *et seq.*

113.    Defendants have violated West Virginia Code § 46A-6-101, *et seq.*

114.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

115.    Defendants' willful and unlawful conduct allow Plaintiff and the Class to seek attorneys' fees in the states where they allowed by law.  Therefore, Plaintiff and the Class seek attorneys' fees where they are allowed by law.

**Count Four**

**(Restitution For Unjust Enrichment)**

116.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further alleges, as follows, against all Defendants.

117.    This claim is asserted on behalf of class members who indirectly purchased graphics processing units and cards and reside in the following states:  Arizona, California, the District of Columbia, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

118.    The Defendants have knowingly accepted and benefited from the overcharges they have been able to levy for graphics processing units and cards resulting from the acts alleged herein and the overpayments by Plaintiff and the Class.

119.    As a direct and proximate result of the Defendants' acts and practices, the Defendants have been and are continuing to be unjustly enriched at the expense of and to the detriment of the Plaintiff and members of the Class.

120.    Plaintiff and the Class have conferred upon the Defendants an economic benefit in the nature of revenues resulting from unlawful overcharges, to Plaintiff's and the Class' economic detriment.

121.    The economic benefit of overcharges obtained by supra-competitive prices is a direct and proximate cause of Defendants' anti-competitive behavior restricting competition as set forth below.

122.    The benefit held by Defendants rightfully belongs to Plaintiff and the Class, as Plaintiff and the Class have paid supra-competitive sums during the Class Period.

123.    It would be inequitable for Defendants to be permitted to retain any of the proceeds of the conspiracy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Class, prays for judgment against the Defendants, jointly and severally, as follows:

A.    Declare that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Class as defined herein and further

order notice of such action to all members of the Class in the most effective practicable manner;

      B.     Find that the Defendants, by participating in the contract, combination and conspiracy alleged herein,

               (i)     acted in violation of Section 1 of the Sherman Act identified in Count One;

               (ii)    acted in violation of the state antitrust laws and state consumer protection and unfair competition laws identified in Counts Two and Three;

               (iii)   were unjustly enriched as set forth in Count Four.

      C.     Enjoin Defendants from continuing the illegal activities alleged herein;

      D.     Award Plaintiff and members of the Class damages as provided by law, including actual damages, multiple damages where provided by law and/or statutory minimum damages where provided by law, and joint and several judgments in favor of Plaintiff and the Class as provided by law;

      E.     Award Plaintiff and members of the Class restitution on a pro-rata basis, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

      F.     Award Plaintiff and the members of the Class pre-judgment and post-judgment interest on the above sums at the highest rate provided by law;

      G.     Allow Plaintiff and members of the Class to recover their reasonable attorneys' fees and costs as provided by law; and

H.    Grant such other and further relief as this Court deems to be necessary, proper just and/or equitable.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all issues so triable as a matter of right.

Dated: December 23, 2006

GILMAN AND PASTOR, LLP

Kenneth G. Gilman #192760
Daniel D'Angelo BBO # 630321
225 Franklin Street, 16th Floor
Boston, MA  02110
Tel: (617) 742-9700
Fax: (617) 742-9701

Attorneys for Plaintiff and the Class